IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| **BRENT COOLEY,** | § | **CIVIL ACTION NO.: 3:21-cv-151** |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | |
| | § | **JURY DEMANDED** |
| **GALVESTON COUNTY** | § | |
| **SHERIFF'S OFFICE,** | § | |
| | § | |
| *Defendant.* | § | |

### PLAINTIFF'S ORIGINAL COMPLAINT

**TO THE HONORABLE U.S. DISTRICT COURT JUDGE:**

NOW COMES Plaintiff Brent Cooley (hereinafter "Plaintiff") in the above-referenced matter, complaining of and about Galveston County Sheriff's Office (hereinafter "Defendant"), and files this Original Complaint, showing the following to the Court:

### I. PARTIES

1. Plaintiff Brent Cooley is an individual residing in Galveston County, Texas. Plaintiff was employed by Defendant. Plaintiff is a citizen of the State of Texas and of the United States.

2. Defendant Galveston County Sheriff's Office is a unit of local government organized under the laws of the State of Texas operating out of Galveston, Texas. Defendant can be served by and through its registered agent at its headquarters, which is located at Galveston County Sheriff's Office 601 54th Street Galveston, Texas 77551.

## II. JURISDICTION AND VENUE

3. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, which confers original jurisdiction upon this Court for actions arising under the laws of the United States, and pursuant to 28 U.S.C. §§ 1343(3) and 1343(4), which confer original jurisdiction upon this Court in a civil action to recover damages or to secure equitable relief (i) under any Act of Congress providing for the protection of civil rights; (ii) under the Declaratory Judgment Statute, 28 U.S.C. § 2201; 42 U.S.C. § 2000e et seq., as amended, and (iii) 42 U.S.C. § 1981 et seq., as amended.

4. The Court's supplemental jurisdiction is invoked pursuant to 28 U.S.C. § 1367(a), which confers supplemental jurisdiction over all non-federal claims arising from a common nucleus of operative facts such that they form part of the same case or controversy under Article III of the United States Constitution.

5. Venue is proper in the Southern District of Texas pursuant to 28 U.S.C. § 1391(b) because the Defendant and the Plaintiff transacted business within this judicial district and a substantial part of the events or omissions giving rise to this Complaint occurred in this district. At all times pertinent to this Complaint, Defendant maintained offices, conducted business, and resided in this district.

## III. FACTS

6. Plaintiff began working for Defendant in 2000, at age 28, as a Deputy in the Corrections Division. In 2003, Plaintiff was transferred to the Patrol Division. In 2006, Plaintiff was awarded "Deputy of the Year" by the Galveston County Sheriff's Association. In July 2011, Plaintiff was promoted to the rank of Sergeant in the Patrol Division, which began his supervisory role in the department. In 2017, Plaintiff completed the Leadership Command College and obtained a highly regarded professional designation. During his employment, Plaintiff was a loyal

and admirable employee that performed exceptionally well which translated into a very successful career with Defendant. On May 25, 2018, Plaintiff was awarded a Gubernatorial Commendation directly from the Texas Governor, Gregg Abbott.

7. On May 18, 2018, Plaintiff responded to the Santa Fe mass school shooting; where eight (8) students and two (2) teachers were killed and thirteen (13) others were injured. Plaintiff led the response team and made the initial arrest on the shooter. Plaintiff was tasked to personally verify each of the students and teachers' deaths inside the classrooms after he had arrested the shooter.

8. On the night of May 18, 2018, immediately following the mass shooting, Plaintiff was tasked to work the "Go Topless" Jeep weekend in Crystal Beach, Texas. This event required Plaintiff to work overtime for three (3) nights in a row from May, 18, 2018 to May 20, 2018. During this weekend, Plaintiff, along with the other first responders that witnessed the mass shooting, were not offered or provided with care. After the "Go Topless" Jeep weekend, Plaintiff was sent to a "Critical Incident Debrief" to discuss the mass shooting. Defendant did not provide Plaintiff with any other mental health measures prior to his return to work.

9. On or around September 2018, Plaintiff was promoted to Lieutenant within the School Liaison Division as the Assistant Division Commander. Plaintiff was tasked to oversee the Texas City Independent School District (hereinafter "TCISD") contract. This required him to supervise eighteen (18) deputies, three (3) sergeants, two (2) corporals, and thirteen (13) deputies on all fourteen (14) of TCISD's campuses.

10. On May 16, 2019, Plaintiff was awarded one of the highest distinctions in his profession when he was awarded the 100 Club "Office of the Year" award for his actions in the

Santa Fe mass shooting. During this time, Plaintiff was at the top of his career and was highly regarded as one of the top officers in his department.

11. In December 2019, Plaintiff began to experience flashbacks, nightmares, and hallucinations related to the Santa Fe mass shooting. Given that Defendant failed to provide any assistance in the past, Plaintiff felt that he was on his own to recover from such a traumatic event.

12. In February 2020, Plaintiff notified his Supervisor, Captain Josette Rivas (hereinafter "Captain Rivas"), of his symptoms related to the Santa Fe mass shooting. He told Captain Rivas that he was experiencing more symptoms, which included sleep deprivation and depression. Captain Rivas gave Plaintiff the contact information for the Defendant's Employee Assistance Program. Plaintiff was then authorized to seek counseling from Mr. Mark Middlebrooks (hereinafter "Mr. Middlebrooks"), a licensed clinical social worker. Upon Plaintiff's initial visit, he was advised by Mr. Middlebrooks that Defendant's Employee Assistance Program was not appropriate for the symptoms Plaintiff was experiencing. At this point, Plaintiff was diagnosed with post-traumatic stress disorder (hereinafter "PTSD") and depression. Defendant's Employee Assistance Program only provided six (6) session per calendar year. Mr. Middlebrooks asserted to Plaintiff that he needed more sessions than what Defendant's Employee Assistance Program offered.

13. Plaintiff alerted Captain Rivas of his diagnosis and stated he needed extensive treatment, per the instructions given to him by Mr. Middlebrooks. Captain Rivas and Defendant's Human Resource department considered the diagnosis an "on-the-job injury/illness". Plaintiff was then able to initiate a Worker's Compensation claim. Plaintiff was then referred to another physician, who prescribed Plaintiff medication for his depression and sleep deprivation. Plaintiff continued his treatment as required and attempted to do his best with the circumstances.

14. On May 18, 2020, the two-year anniversary of the Santa Fe mass shooting, Plaintiff was invited to attend a gathering at Blue's Bar & Grill in Santa Fe, Texas. This was an annual memorial gathering between the officers involved in response to the Santa Fe mass shooting. Given Plaintiff's role in the Santa Fe mass shooting, he was reluctant to attend given that he was still suffering from PTSD and depression. Plaintiff asserts that he is not an avid drinker of alcoholic beverages, but given the circumstances of the mass shooting and the anniversary of the mass shooting, Plaintiff became intoxicated to a point where he blacked out and does not remember any of the events that occurred that night.

15. On May 19, 2020, Plaintiff was notified by a co-worker that Plaintiff had used a racial slur towards one of the deputies who arrived at the gathering to take him home. It was alleged that Plaintiff either poked or pushed the deputy with his hand. Plaintiff asserted he had no recollection of these events. Plaintiff did not contest the allegation, but cooperated fully in Defendant's investigation. Subsequently thereafter, a resolution between Plaintiff, Defendant, and the deputy involved was reached. The deputy involved stated that she did not wish to pursue any departmental complaint against Plaintiff or seek sanctions against him. At this point, Plaintiff was told that the matter had been resolved.

16. On June 1, 2020, Plaintiff was told by Captain Rivas and Major Ron Hill (hereinafter "Major Hill") that a complaint was being made against him by Chief Deputy Darryl Isaacks (hereinafter "Chief Deputy Isaacks") regarding the off-duty incident. Plaintiff was placed on Administrative Leave pending an internal investigation by the Office of Professional Standards.

17. On June 18, 2020, Plaintiff was formally served with a complaint by an Office of Professional Standards representative, Lieutenant Bruce Balchunas. The complaint alleged that

Plaintiff violated three (3) department policies, including: (i) conduct prejudicial to good order; (ii) conduct toward fellow employees; and (iii) violation of law.

18.     On July 8, 2020, Plaintiff's allegations were sustained by the Office of Professional Standards and Captain Rivas recommended the termination of Plaintiff. Plaintiff denied the recommendation and requested a hearing before Defendant's Adverse Action Review Board. Plaintiff confirmed with Captain Rivas that if he were terminated that the termination would be at his current rank of Lieutenant.

19.     On July 21, 2020, Defendant's Adverse Action Review Board upheld Captain Rivas's recommendation for termination and Plaintiff filed an appeal. Within ten (10) minutes on Defendant's Adverse Action Review Board's recommendation, Lieutenant Margo Ihde sent an e-mail to her division stating that Plaintiff was no longer employed with Defendant effective immediately. Around the same time, Plaintiff sought medical leave under FMLA, and the appeal for Plaintiff's recommendation for termination was postponed pending his return to work. Plaintiff was granted leave starting August 10, 2020 and ending November 2, 2020. Prior to going on leave, Captain Rivas alerted Plaintiff that TCISD submitted a request to remove Plaintiff from his contract. This demoted Plaintiff from a Lieutenant to a Deputy 1.

20.     On August 6, 2020, Plaintiff received a letter from Captain Rivas stating that he had been removed from the TCISD contract. Defendant and TCISD failed to follow the proper protocol in removing Plaintiff from the TCISD system, which in the past, would be directed the TCISD's Executive Director of Security and School Safety. This demotion caused Plaintiff to take an eighteen (18) dollar per hour pay cut, and he was reassigned to the Corrections Division where he first started his career. Although Plaintiff was made aware by Captain Rivas of his removal from the TCISD contract, Captain Rivas did not advise him of any demotion in rank, pay cut,

reassignment, or any of his relevant chain of command or immediate supervisor. Prior to this action, all Defendant's personnel transfer to or from the TCISD contract were explicitly handled by the Executive Director of Security and School Safety. During this time, the Executive Director of Security and School Safety was not consulted or notified of Plaintiff's removal by Captain Rivas. Captain Rivas communicated solely with the newly installed Superintendent, Dr. Melissa Duarte (hereinafter "Dr. Duarte"). Plaintiff had never met Dr. Duarte as she was hired on June 1, 2020, during a time Plaintiff was not working. The action in removing Plaintiff suggests that Defendant, via Captain Rivas, sought to terminate him by using the TCISD to do Defendant's "dirty work". There was no cause for TCISD to remove Plaintiff from his contract for his actions on May 18, 2020 as a result of allegations of Defendant's policy violations. This duty should have fallen on Defendant to conduct the allegations rather than using TCISD to do so. The actions by TCISD and Defendant were in retaliation against Plaintiff given that he was still in the middle of his appeal and that he was affirmatively told that he was going to be able to stay in his Lieutenant position during his FMLA leave.

21. There is no evidence that Plaintiff violated any policy of TCISD. The actions to eliminate his contract was a unilateral decision to target Plaintiff based on the ongoing appeal that he was a part of.

22. During Plaintiff's nineteen (19) years of service, Plaintiff has never been disciplined or reprimanded for any violation of policies or displayed any contravening conduct of this nature.

23. Plaintiff is aware of another administrative sergeant who used racial slurs while on-duty to other employees of Defendant, but has not faced similar sanctions or punishments. Plaintiff asserts that such selective treatment is the basis of discrimination and retaliation claims.

24. During a live virtual debate between the incumbent Sheriff Trochesset and his opponent, Mark Salinas (hereinafter "Mr. Salinas") on the Facebook page of I45Now, a local news outlet, Plaintiff's situation was inserted by Mr. Salinas to Sheriff Trochesset. Sheriff Trochesset deflected answering or responding to Plaintiff's situation as it was still under investigation. During this debate topic, public comments were being made about Plaintiff's situation by Defendant's Captain Michael Bell (hereinafter "Captain Bell"). Captain Bell is the Division Commander for the Forensic Services Unit, held a command staff level position with Defendant, and sat on the Adverse Action Review Board on July 21, 2020 that rendered the upholding of Plaintiff's termination. Captain Bell's comments on the I45Now Facebook page are in clear violation of Defendant's policies, which included making public statements, divulging pay information of other employees, and revealing confidential information to any Internal Affairs investigation.

25. Given that Defendant has a point system for retirement benefits and the fact that Plaintiff is 48 years old with nineteen (19) years of service, he is close to reaching the mark to acquire his retirement benefits. However, the discrimination and retaliation he has faced continues to tarnish the great career that Plaintiff was able to put forth.

26. The maltreatment led by Captain Rivas directed towards Plaintiff, the fact that any accommodation for Plaintiff's disability was limited, and the fact that Plaintiff's employment was recommended for termination creates inferences of discrimination. Plaintiff, a distinguished officer, was demoted and lost out on wages because of retaliatory and discriminatory tactics, which provide sufficient circumstantial evidence to prove a prima facie case of discrimination under the ADAAA and FMLA. Defendant's workplace culture is replete with a discriminatory work environment, in which discriminatory demotions and terminations are condoned.

## IV. CLAIMS

### COUNT 1 – DISABILITY DISCRIMINATION

27. Plaintiff incorporates by reference all of the foregoing allegations in each of the paragraphs above as if fully set forth herein.

28. Plaintiff is a qualified individual within the mean of the ADAAA (42 U.S.C. § 12111(8)).

29. Defendant is an employer and cover entity under the ADAAA (42 U.S.C. §§ 12111(2), (5)(A)).

30. Plaintiff was an employee of Defendant under the ADAAA (42 U.S.C. § 12111(4)).

31. Plaintiff suffers from mental illness. As such, Plaintiff suffers from a disability—a mentally impairing condition that substantially limits his activities—within the meaning of the ADAAA (42 U.S.C. §§ 12102(1)(A), 2(A), 2(B)).

32. Defendant regarded or perceived Plaintiff as having a disability within the meaning of the ADAAA (42 U.S.C. §§ 12102(1)(C), (3)(A)).

33. Defendant discriminated against Plaintiff on the basis of his disability in violation of the ADAAA (42 U.S.C. § 12112).

34. Defendant also discriminated against Plaintiff by being "regarded as" having a disability.

35. Plaintiff was disabled based on his mental impairment, which substantially limits his activities. He can perform the job with reasonable accommodation, but he was discharged by Defendant after he made a request for an accommodation because of his disability. Finally, Plaintiff was treated differently than other employees because Defendant failed to consistently

follow the same procedures, with non-disabled employees, which ultimately led to Plaintiff's termination.

### CLAIM 2 – TCHRA DISABILITY DISCRIMINATION

36. Plaintiff incorporates by reference all of the foregoing allegations in each of the paragraphs above as if fully set forth herein.

37. The aforementioned conduct by Defendants constitutes violations of Chapter 21, ofthe Texas Labor Code (the TCHRA). *See* Tex. Lab. Code §21.001 *et seq*. Specifically, Defendant has discriminated against Plaintiff because of his disability in violation of §§ 21.051 and 21.055 of the Texas Labor Code, which states in relevant part that:

> [a]n employer commits an unlawful employment practice if because of race, color, disability, religion, sex, national origin, or age, the employer (1) fails or refuses to hire an individual, discharges an individual, or discriminates in any other manner against an individual in connection with compensation or the terms, conditions, or privileges of employment; or (2) limits, segregates, or classifies an employee or applicant for employment in a manner that would deprive or tend to deprive an individual of any employment opportunity or adversely affect in any manner the status of an employee.

38. Plaintiff's rights were violated when Defendant failed to accommodate for Plaintiff's medical condition, after requests for such accommodation. Plaintiff's rights were violated when he lost promotional and career opportunities because of his disability. Additionally, the conduct described herein created a hostile work environment under Texas law.

### V. JURY DEMAND

39. Plaintiff demands a jury on all issues to be tried in this matter. As such, Plaintiff submits a jury demand and herein submits the jury fee.

## VI. **PRAYER**

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that Defendant be cited to appear, and answer herein, and that on final trial, Plaintiff has a judgment against Defendant for the following:

a. All damages that Plaintiff may be entitled to pursuant to this Original Complaint, or any amendments thereto, including (but not limited to) back pay, future wages, reinstatement, upgrading, and compensation for benefits not received;

b. Compensatory damages, including (but not limited to) emotional distress;

c. Past, present, and future physical pain and mental suffering;

d. Punitive damages;

e. Liquidated damages;

f. Reasonable attorneys' fees, as allowed by law (with conditional awards in the event of appeal);

g. Pre-judgment interest (at the highest rate permitted by law);

h. Post-judgment interest from the judgment until paid (at the highest rate permitted by law);

i. Costs of Court; and

j. Such other and further relief, at law or in equity, to which Plaintiff may be entitled, whether by this Original Complaint or by any proper amendments thereto.

Respectfully Submitted,



Alfonso Kennard Jr.
Texas Bar No.: 24036888
Southern District No.: 713316
alfonso.kennard@kennardlaw.com
Eddie Hodges, Jr.
Texas Bar No.: 24116523
Southern District No.: 3479748
Eddie.Hodges@kennardlaw.com
5120 Woodway Dr., Suite 10010
Houston Texas 77056
(713) 742 -0900 (main)
(713) 742 -0951 (facsimile)
**ATTORNEYS IN CHARGE
FOR PLAINTIFF**